**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KIMBERLY B.,

                                        Plaintiff,                    3:23-CV-1646
                        v.                                           (CFH)

COMMISSIONER OF SOCIAL SECURITY,[1]

                                Defendant.

**APPEARANCES:**                              **OF COUNSEL:**

Lachman, Gorton Law Firm                      PETER A. GORTON, ESQ.
Post Office Box 89
1500 East Main Street
Endicott, New York 13760-0089
Attorney for plaintiff

Social Security Administration                VERNON NORWOOD, ESQ.
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM DECISION AND ORDER**[2]

---

[1] Pursuant to Federal Rule of Civil Procedure (Fed. R. Civ. P.) 25(d), the current Acting Commissioner of Social Security, Carolyn W. Colvin, has been substituted in place of her predecessor, Commissioner Martin O'Malley.  The caption remains the same.

[2] The parties consented to direct review of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, Local Rule 72.2(b), and General Order No. 18.  See Dkt. Nos. 3, 5.

Kimberly B.[3] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits.  See Dkt. No. 1.

Plaintiff moves for judgment on the pleadings.  See Dkt. No. 7.[4]  The Commissioner cross-moves for judgment on the pleadings.  See Dkt. No. 9.[5]  Plaintiff replies.  See Dkt. No. 10.  For the reasons stated below, plaintiff's motion is denied, the Commissioner's motion is granted, and the Commissioner's final decision is affirmed.

## I. Background and Procedural History

On April 21, 2016, plaintiff filed a Title II application for disability insurance benefits and Title XVI application for supplemental security income benefits, alleging a disability onset date of September 24, 2004.  See T. at 147.[6]  Plaintiff asserted that she was disabled due to "Panic Disorder, Herniated Disc, Post-Myleogram Syndrome, Agoraphobia, Anxiety, Folded Ankle, Shoulder Injury, Head Injury, Traumatic Brain Injury, Nerve Damage, [and] Back Injury."  Id. at 147-48.

The Social Security Administration ("SSA") denied the claim on September 6, 2016.  See T. at 145-46.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Bruce S. Fein held a hearing on July 12, 2018.  See id. at 64-

---

[3] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

[4] Citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

[5] This matter has been treated in accordance with General Order No. 18.  Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[6] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  See Dkt. No. 6.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

123, 200-202.  On September 12, 2018, the ALJ issued an unfavorable decision.  See id. at 171-183.  Thereafter, the Appeals Council remanded the case to the ALJ for further consideration.  See id. at 264-65.  On July 28, 2020, ALJ Fein held another hearing; he issued another unfavorable decision on September 2, 2020.  See id. at 11-30, 125-44.  The Appeals Council denied plaintiff's request for review, and plaintiff filed a claim in this Court under 42 U.S.C. § 405(g).  See id. at 801-809.  On September 28, 2022, Magistrate Judge David E. Peebles issued a decision remanding the case for further proceedings.  See id. at 815-36.  On January 31, 2023, the Appeals Council "again sent this case back to the [ALJ]" for further proceedings.  Id. at 840.

On August 4, 2023, ALJ Jeremy Eldred held a hearing, and on August 29, 2023, issued a decision that was favorable in part and unfavorable in part.  See T. at 723-37; 747-72.  Specifically, ALJ Eldred granted plaintiff's application for supplemental security income under Title XVI, finding that plaintiff "has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on April 21, 2016."  Id. at 737. However, the ALJ denied plaintiff's application for a period of disability and disability insurance benefits under Title II, finding that plaintiff "was not disabled under sections 216(i) and 223(d), respectively, of the Social Security Act through December 31, 2015, the date last insured."  Id.  Plaintiff timely commenced this action before the Court on December 28, 2023, challenging the unfavorable portion of the Commissioner's final decision.  See Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

Sentence four of 42 U.S.C. § 405(g) grants the court the authority "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the Commissioner's final decision, a district court may not determine de novo whether an individual (the "claimant") is disabled.  See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  The district court may reverse the Commissioner's final decision only if the ALJ failed to apply the correct legal standards or support the decision with substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal citations omitted).  This is "a very deferential standard of review," meaning that once an ALJ finds facts, the court can reject them "only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted); see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (reminding that it is for the ALJ to weigh conflicting evidence in the record) (citing Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the court should not affirm even though the ultimate conclusion is arguably supported by substantial evidence.  Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the

ALJ applied the correct legal standards, and substantial evidence supports the decision, the court must uphold the Commissioner's conclusion even if the evidence is "susceptible to more than one rational interpretation."  Schillo v. Kijakazi, 31 F.4th 64, 74 (2d Cir. 2022) (quoting McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014)).

### B. Determination of Disability

Under 42 U.S.C. § 423, every individual who is under a disability shall be entitled to a disability benefits.  42 U.S.C. § 423(a)(1)(E).  Disability is defined as is the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A disabling impairment is an affliction that is so severe it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).  Such impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3); see also Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) ("Determinations of severity are based on objective medical facts, diagnoses or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience.") (citing, inter alia, Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

To determine whether the claimant is entitled to disability benefits, courts use a five-step evaluation, based on 20 C.F.R. §§ 404.1520 and 416.920, as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in [20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")]. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003).

The plaintiff bears the burden of proof at the first four steps, and the Commissioner bears the burden at step five to show that the plaintiff can engage in gainful employment somewhere. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).

### III. ALJ Eldred's Five-Step Disability Evaluation: Issued August 29, 2023

The ALJ began by noting, among other things, that plaintiff alleged disability from September 24, 2004, through the present. See T. at 723. However, the ALJ found plaintiff's earnings record to support a finding that she had only "acquired sufficient

quarters of coverage to remain insured through December 31, 2015[, and thus] must establish disability beginning on or before December 31, 2015" to be eligible for Title II benefits.  Id. at 723-24; see also id. at 725.

Applying the five-step disability sequential evaluation, the ALJ first determined that though plaintiff engaged in substantial gainful activity between July 2008 and March 2009, she did not engage in substantial gainful activity for the remainder of the relevant time.  See T. at 725-26.  At step two, the ALJ found that, for plaintiff's Title II application, she had the severe impairment of "degenerative disc disease of the lumbar spine."  Id. at 726.  The ALJ found plaintiff's withdrawal from opioid medications, obesity, vision impairment, headaches, and medically-determinable mental impairments to be non-severe.  See id.  Conversely, for plaintiff's Title XVI application, plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, rotator cuff impingement of the left shoulder, and anxiety disorder."  Id. at 726.  At step three, the ALJ determined that, for both applications, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  See id. at 728-29.

The ALJ then concluded that, "through the expiration of the date last insured [December 31, 2015], plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work."  T. at 729 (citing 20 C.F.R. §§ 404.1567(a) and 416.967(a)).  However, the ALJ found that "[s]ince April 21, 2016, the date that claimant filed her claim for supplemental security income," plaintiff had the RFC to perform a full range of sedentary work with a number of additional physical and mental limitations.  T. at 729.  At step four, the ALJ determined that plaintiff could not perform her past

relevant work "at any time relevant to this decision."  See id. at 735.  At step five, the ALJ considered plaintiff's RFC, age, education, and work experience, as well as the medical-vocational guidelines.  See id. at 734-35 (citing 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids")).  The ALJ concluded that, under the Grids, from December 31, 2015, there were jobs that existed in significant numbers that plaintiff could have performed.  See id. at 735.  However, the ALJ concluded that, from April 21, 2016 onward, there have not been jobs existing in significant numbers in the national economy that plaintiff could perform.  See id. at 736.  Thus, the ALJ determined that plaintiff had was not disabled through the expiration of her date last insured, but she has been disabled since April 21, 2016.  See id.

## IV. Discussion

Plaintiff argues that the ALJ: (1) erred and failed to cite substantial evidence in concluding that plaintiff was not disabled up through December 2015 while concluding that she was eligible for supplemental security income starting April 2016; (2) failed to support the decision with substantial evidence in finding plaintiff's headaches to not be a medically-determinable impairment; (3) erred and failed to cite substantial evidence when finding plaintiff's mental impairments non-severe at step two; and (4) relied on irrelevant evidence.  See Dkt. No. 7 at 11-24.  Plaintiff contends that the Commissioner's decision should be remanded for the calculation of benefits, or for further administrative proceedings.  See id. at 24; see also Dkt. No. 10 at 4.

The Commissioner argues that substantial evidence supports ALJ Eldred's decision regarding plaintiff's: (1) headaches; (2) mental impairments; and (3) allegations

of disability up through December 2015.  See generally Dkt. No. 9.  The Commissioner

contends that the decision should be affirmed.  See id.

### A.  Title II and XVI Disability

Plaintiff frames her first argument in terms of legal error, stating: "[t]he ALJ's

conclusion that plaintiff was disabled as of April 2016 but not four months earlier in

December 2015 is erroneous."  See Dkt. No. 7 at 13.  However, a review of the briefing

reveals that plaintiff's challenge primarily focuses on whether substantial evidence

supports the ALJ's findings regarding (1) plaintiff's pre-2016 symptom statements and

(2) an RFC allowing for a full range of sedentary work up through December 2015.  See

id. at 11-15.  Later in her brief, plaintiff argues that the ALJ relied on irrelevant evidence

in making these findings.  See id. at 23-24.  The Commissioner's responses to these

arguments are contained in point three of its cross motion.[7]  See Dkt. No. 9 at 12-16.

For judicial efficiency, the Court resolves these issues together in this section A.

### 1. Legal Standards

### a. Determination of Disability Periods

For a claimant to be "insured" for disability benefits under Title II of the Social

Security Act, they must have had, in any month, "not less than 20 quarters of coverage

during the 40-quarter period which ends with the quarter in which such month occurred."

42 U.S.C. § 423(c)(1)(B)(i).  A claimant is entitled to Title II disability insurance benefits

only if they became disabled prior to the last date insured.  See Arnone v. Bowen, 882

---

[7] The Commissioner did not directly respond to plaintiff's argument regarding the alleged legal error in the ALJ's non-disability finding through December 2015 and disability finding from April 2016 onward.  See generally Dkt. No. 9.  Instead, the Commissioner focused solely on plaintiff's substantial evidence arguments for the pre-2016 period.  See id. at 10-14.  Despite this, the Court declines to remand based on a finding that plaintiff's legal-error argument is conceded, as plaintiff requests in her reply brief.  See Dkt. No. 10 at 1.  This is because, as stated below, plaintiff's argument based in legal error is meritless.

F.2d 34, 38 (2d Cir.1989) ("[R]egardless of the seriousness of his present disability, unless [claimant] became disabled before [his last date insured], he cannot be entitled to benefits.") (citing 20 C.F.R. § 404.130(b)).  The date last insured for Title II purposes is determined by examining the alleged onset date of the disability and the claimant's quarters of coverage.  See Social Security Ruling ("SSR") 18-1p, 2018 WL 4945639, at *3-6 (S.S.A. Oct. 2, 2018).[8]

Conversely, for supplemental security income applications under Title XVI, "[t]he earliest month for which SSI benefits could be paid would be the month following the month [in which the application was filed]."  Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 486 (2d Cir. 2012) (citing 20 C.F.R. § 416.335) ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application.").

### b. Subjective Symptom Testimony

In evaluating a plaintiff's claim of disability, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  See Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010).  Evaluation of a claimant's symptoms involves a two-step process.

> First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments could reasonably be expected to produce the pain or other symptoms alleged.
> If so, the ALJ must then consider the extent to which the claimant's alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the objective medical evidence and other

---

[8] Social Security Rulings do not have the force of law but are binding on "all components of the Social Security Administration."  Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984).

> evidence, in order to decide how these symptoms affect the
> claimant's ability to work.

See 20 C.F.R. § 404.1529(a)-(b); Barry v. Colvin, 606 F. App'x 621, 623 (2d Cir. 2015)

(summary order) (citing Genier, 606 F.3d at 49).

The ALJ must assess the claimant's subjective complaints by considering the

objective medical evidence as well as: (1) the claimant's daily activities; (2) the location,

duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and

aggravating factors; (4) the type, dosage, effectiveness, and side effects of any

medication taken to relieve symptoms; (5) other treatment received to relieve

symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any

other factors concerning the claimant's functional limitations and restrictions due to

symptoms.  See 20 C.F.R. § 404.1529(c)(2)-(3).  "The ALJ must 'carefully consider' all

the evidence presented by claimants regarding their symptoms" within these categories.

Del Carmen Fernandez v. Berryhill, No. 18-cv-326 (JPO), 2019 WL 667743, at *9

(S.D.N.Y. Feb. 19, 2019) (citing, inter alia, SSR 16-3p, Titles II and XVI: Evaluation of

Symptoms in Disability Claims, 2016 WL 1020935 (S.S.A. Mar. 16, 2016)).

### c. RFC

A claimant's RFC represents a finding of the range of tasks that can be

performed notwithstanding the impairments at issue.  See 20 C.F.R. § 404.1545(a);

Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33 (2d Cir. 2013) (summary order).  To

properly ascertain an RFC, the ALJ must assess the claimant's exertional capabilities,

such as the ability to sit, stand, walk, lift, carry, push, and pull.  See 20 C.F.R.

§ 404.1545(b).  Non-exertional capabilities, including postural and manipulative

limitations, must also be considered.  See id.  The ALJ also must consider the

claimant's limitations due to any medically-determinable mental impairments.  See id. § 416.945(c).

As with other steps of the sequential evaluation, an RFC determination is informed by consideration of "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3); Tankisi, 521 F. App'x at 33; see also Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (reminding that the RFC determination must be supported by substantial evidence).  An ALJ's RFC conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [the] decision, [because an ALJ is] entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  When formulating a claimant's RFC, the ALJ must specify those functions that the claimant can perform; conclusory statements concerning a claimant's capabilities will not suffice.  See Martone, 70 F. Supp. 2d at 150 (citing Ferraris, 728 F.2d at 587).

**2. Analysis**

Plaintiff first asserts that the decision contains legal error due to the fact that the ALJ found plaintiff not disabled between September 24, 2004, and December 31, 2015, but then found plaintiff disabled from April 2016 onward.  See Dkt. No. 7 at 13.  Plaintiff contends that the ALJ's selection of these dates was "entirely arbitrary" and "capricious."  See id. at 14, 15.  However, the record demonstrates that the ALJ chose these dates because on April 21, 2016, plaintiff applied for both disability insurance benefits under Title II and supplemental security income under Title XVI, alleging an onset date of September 24, 2004.  See T. at 147.  Further, for the Title II application,

plaintiff needed to show she met the insured status of Sections 216(i) and 223 of the Social Security Act, and the ALJ determined that plaintiff's "date last insured" was December 31, 2015.  See T. at 723-24.  Given these dates, the ALJ correctly concluded that, to qualify for Title II benefits, plaintiff was required to "establish disability beginning on or before December 31, 2015."  T. at 724; see also Arnone, 882 F.2d at 38; 20 C.F.R. § 404.130(b).  The ALJ also correctly found that plaintiff's application date of April 21, 2016, was the starting point her Title XVI application.  See id. at 736; see also 20 C.F.R. § 416.335; Frye, 485 F. App'x at 486.  There is nothing legally erroneous with denying a Title II claim that expires by a certain date but granting a later-filed Title XVI claim; multiple courts in this Circuit have observed that this issue depends on the relevant dates and medical evidence.  See New v. O'Malley, No. 23-643-cv, 2024 WL 1266412, at *1 (2d Cir. Mar. 26, 2024) (summary order) (affirming the ALJ's denial of the plaintiff's Title II application "for the period from April 20, 2008, through December 31, 2010" where the ALJ also granted plaintiff's Title XVI claim from April 4, 2012 onward); Grint v. Comm'r of Soc. Sec., No. 15-cv-6592 (KAM) 2018 WL 1902335, at *1 (E.D.N.Y. Apr. 20, 2018) (finding no error in the ALJ's determination that the plaintiff was not disabled for Title II purposes but was disabled for Title XVI purposes, where the evidence showed the plaintiff became disabled after his date last insured); Banyai v. Comm'r of Soc. Sec., No. 12-cv-5409 (SLT), 2017 WL 5558589, *6 (E.D.N.Y. Mar. 6, 2017) (same); Heagney-O'Hara v. Comm'r of Soc. Sec., No. 13-cv-6083 (CJS); 2015 WL 860849, at *1 (W.D.N.Y. Feb. 27, 2015) (same).

Turning to the core of plaintiff's first argument, she states:

> The ALJ's conclusion that she was not disabled before April 21 is not supported by substantial evidence.  This is because

April 21, 2016, has no medical significance. Nothing happened on April 20th or 21st or in the period between December 2015 and April 2016, that caused Plaintiff to become disabled. There is no medical evidence of anything happening in the days, weeks, or even months prior April 21 such that her overall medical and physical functioning materially changed. Thus, there is no substantial basis for the ALJ to conclude that Plaintiff's physical and/or mental functioning were different on April 21, 2016 (when he finds her eligible for benefits) than December 31, 2015 (when he says she is not disabled).

Dkt. No. 7 at 11. The Court agrees that April 21, 2016, has no <u>medical</u> significance in this case, as the ALJ noted this date solely because it was plaintiff's application date. <u>See</u> T. at 147. However, the Court does not read the decision as indicating that the ALJ found a material change in plaintiff's condition between December 2015 and April 2016. Instead, the ALJ's distinction between the Title II and XVI applications rests on what the evidence showed in the years between September 2004 and December 31, 2015, and what it showed after April 21, 2016. <u>See Wanda N. v. Comm'r of Soc. Sec.</u>, No. 6:21-cv-358 (TJM), 2022 WL 4376484, at *7 (N.D.N.Y. Sept. 22, 2022) (reminding that substantial evidence can be found to support an ALJ's conclusions where the court can glean the ALJ's rationale from the decision as a whole) (citing <u>John L. M. v. Kijakazi</u>, No. 5:21-cv-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022)). In her briefing, plaintiff mainly focuses on her physical impairments and statements of pain surrounding her left shoulder injury, spine, and lower extremities. <u>See</u> Dkt. No. 7 at 11-15. Thus, the Court focuses its substantial-evidence review on these impairments.[9] <u>See</u> N.D.N.Y. G.O. 18 § C(1)(D) (reminding that in Social Security cases, "[t]he issues before the Court are limited to the issues properly raised in the briefs.").

---

[9] To the extent plaintiff's arguments apply to her headaches and mental impairments, the Court addresses these issues in Sections B and C, <u>supra</u>, for judicial efficiency.

In considering plaintiff's symptom statements, the ALJ noted plaintiff's testimony at the August 4, 2023, hearing that, relevant to her back and lower extremity impairments, she was: (1) was unable to walk after her cerebrospinal fluid leak and myelogram in 2004; (2) had impaired gait and sensation deficits on her left side after these occurrences; (3) used medications for pain and inflammation; (4) stayed in bed most of the time due to her symptoms and pain; (5) was unable to grocery shop, shower, or perform household chores without help.  T. at 730 (citing id. at 751-67).  The ALJ also noted plaintiff's testimony from the prior administrative hearings that she has been disabled by her pain, lumbar spine impairment, and left shoulder injury.  See id. (citing id. at 956-88).  The ALJ found that, up through December 2015, plaintiff's medically-determinable impairments could "reasonably be expected to cause the symptoms described," but "the evidence from the period prior to [December 31, 2015] does not support [her] allegations regarding the extent of the functional limitations caused by her symptoms."  Id. at 730.

In so finding, the ALJ noted the medical and work-related evidence up through 2015.  See T. at 730-32.  This included plaintiff's 2004 lumbar myleogram that revealed disc bulging and that produced a cerebrospinal fluid leak.  Id. at 1118-24.  However, this also included records showing that the leak was quickly treated with a blood patch, as well as records indicating that plaintiff did not show any problems ambulating during a medical exam in February 2005 with Dr. Saeed A. Bajwa, M.D.  See id. at 1134.  Plaintiff's psychologist also noted no walking problems at an exam in May 2005; he endorsed plaintiff's return to work in September 2005, opining no physical limitations.  See id. at 1158, 1167.  Similarly, the ALJ noted that while plaintiff had been laid off in

May 2009 due to staffing cuts, see id. at 731 (citing id. at 954), Dr. Allen J. Alt cleared

plaintiff to work full time without restrictions on June 2, 2009, noted plaintiff could "walk

well enough" and work full time "in the proper setting" in August 2009, and endorsed

plaintiff's intent to return to work in March 2010 "with restrictions of lifting no more than

10 pounds and no other special accommodations . . . per the patient."  T. at 509, 513,

517.  The ALJ gave this last opinion from Dr. Alt "controlling weight" given his treatment

relationship with plaintiff and support and consistency with the record evidence.  T. at

733.  This evidence provides support for the ALJ's finding on plaintiff's symptom

testimony, as well as an RFC finding of sedentary work.  See 20 C.F.R.

§ 404.1529(c)(2); Hilliard v. Colvin, No. 13-cv-1942 (AJP), 2013 WL 5863546, at *14

(S.D.N.Y. Oct. 31, 2013) (finding substantial evidence supported the ALJ's findings on

plaintiff's statements of intense pain where, among other things, the objective medical

evidence showed mild disc bulging and no gait or station issues); Kelly D. v. Saul, No.

5:18-CV-1190 (DJS), 2019 WL 6683542, at *5 (N.D.N.Y. Dec. 6, 2019) (finding

substantial evidence supported the ALJ's RFC of sedentary work where medical and

opinion evidence indicated the plaintiff's disc bulging was mild); see also Laura H. v.

Comm'r of Soc. Sec., No. 21-cv-213 (JGW), 2023 WL 1767156, at *3 (W.D.N.Y. Feb. 3,

2023) (finding waiver in the plaintiff's failure to challenge the ALJ's persuasiveness

findings on the medical opinions) (citing Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir.

2009)).

Regarding plaintiff's cervical spine and left shoulder injury, the ALJ found that

these conditions appeared to manifest after December 2015.  See T. at 732.  The ALJ

cited (1) evidence of "a left shoulder disorder" that was "first documented objectively

during a consultative physical examination on August 3, 2016," id. at 561-65; (2) x-rays in November 2018 that showed evidence of a rotator cuff impingement and A.N.P. Susan Wenzinger's diagnosis of "rotator cuff impingement syndrome" in June 2020, id. at 666, 670; and (3) a September 2020 x-ray of plaintiff's cervical spine that showed changes in her degenerative disc disease, id. at 1292. These records, and the lack of corresponding records prior to 2016, support the ALJ's finding that the shoulder and cervical impairments, which the ALJ cited in support of the Title XVI disability finding, were not at issue between September 2004 and December 31, 2015. See New, 2024 WL 1266412, at *1-3 (affirming denial of Title II benefits where the evidence demonstrated that the plaintiff had the RFC to perform past work in the period leading up to his date last insured and where contrary evidence from this period was found to be inconsistent—despite that evidence from the post DLI period showed more severe limitations that supported disability under Title XVI); Grint, 2018 WL 1902335, at *12-20 (same). Plaintiff argues that the ALJ could have extrapolated from the post-2015 evidence that these conditions were present prior to December 31, 2015, given plaintiff's symptom statements. See Dkt. No. 7 at 16. However, the ALJ was within his authority to discount plaintiff's symptom statements and formulate an RFC without reference to these conditions, given the lack of evidence in the record. See 20 C.F.R. § 404.1529(b) (regarding the need for medical signs or lab findings supporting a claimant's symptom statements); 20 C.F.R. § 404.1545 (noting an RFC is based on the medical and other evidence in the record); Snyder v. Saul, 840 F. App'x 641, 643 (2d Cir. 2021) (summary order) ("[T]he ALJ was entitled to weigh all of the evidence and make an RFC finding that corresponds with the record as a whole.").

In addition to the medical evidence's inconsistency with plaintiff's symptom statements, the ALJ highlighted that plaintiff worked more-than-sporadically between 2005 and March 2009 when she was laid off due to staffing cuts, as well as that she intended to return to work in March 2010. See T. at 731-32 (citing id. at 954). The ALJ also noted that records from October 2011 showed plaintiff's was adequately performing relevant daily activities, and her medical appointments in 2012-13 were "primarily concerned with non-disabling medical concerns, such as dental problems, rather than [her] back disorder." Id. at 723 (citing id. at 494-500). These are addition permissible reasons for the ALJ to find that plaintiff's allegations of disabling pain were inconsistent with the record; they also provide additional support for the pre-2016 RFC limiting plaintiff to sedentary work. See 20 C.F.R. § 404.1529(c)(3) (noting the consideration of "other evidence" in evaluating symptom testimony can include daily activities, treatment received for pain relief, and "other factors"); 20 C.F.R. § 404.1571 (noting that work a claimant has done during the disability period "may show that [the claimant is] able to work at the substantial gainful activity level"); Rivers v. Astrue, 280 F. App'x 20, 23 (2d Cir. 2008) (summary order) (affirming finding of non-disability where the evidence, including the plaintiff's work activities during the disability period, were not consistent with those of "an individual suffering from disabling pain").

Plaintiff highlights that the decision does not specifically discuss some records detailing her allegations of pain during her medical appointments with Dr. Bajwa in 2004 and Dr. Alt in 2009-12. See Dkt. No. 7 at 14-15 (citing T. at 499, 503, 510, 512, 522-24, 1111, 1120, 1127). However, these records of plaintiff's symptom statements are in line with her hearing testimony highlighted by the ALJ and so are adequately accounted for

in the decision.  See Brault, 683 F.3d at 448 (reminding that the ALJ "is not required to discuss every piece of evidence submitted").

Plaintiff contends that Dr. Alt's opinion on her ability to return to work in June 2009 is irrelevant because it concerns an illness not at issue here, and his similar opinion on plaintiff's return to work in March 2010 is irrelevant because plaintiff never followed through with working after 2009.  See Dkt. No. 7 at 25.  However, the portion of each of these records that is relevant is that Dr. Alt—plaintiff's treating physician at the time—opined that plaintiff's impairments did not impede her ability to work.  See Saul v. Apfel, No. 97-cv-1616 (DC), 1998 WL 329275, at *4 (S.D.N.Y. Jun. 22, 1998) (affirming the ALJ's denial of disability where substantial evidence included doctors' opinions that the plaintiff "was authorized to return to work with only slight restrictions on his physical activities").  Plaintiff also contends that Dr. Alt's refusal to reauthorize a disabled parking permit in August 2009 is irrelevant because walking into a store is very different from the standing and walking required for sedentary work.  See id. at 25-26.  However, even disregarding this piece of evidence, the Court still finds the decision supported by substantial evidence as discussed infra.  See Matuszczak v. Comm'r of Soc. Sec., No. 10-cv-1337 (NAM/VEB), 2012 WL 2374722, at *7 (N.D.N.Y. May 31, 2012) (finding that, even assuming error in the consideration of some evidence, such error would be harmless because "the ALJ's decision was adequately supported by other evidence"), report and recommendation adopted, 2012 WL 2375976 (N.D.N.Y. June 22, 2012).

### B. Plaintiff's Headaches: Step Two

### 1. Legal Standards

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c); 416.920(c). This step is limited to "screen[ing] out de minimis claims."  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  This is done by first determining whether the claimant has a medically-determinable impairment, then examining its severity.  See 20 C.F.R. § 404.1521.  A medically-determinable impairment ("MDI") "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  Id.  Thus, under the regulations, "a physical or mental impairment must be established from an acceptable medical source," and cannot rely on a "statement of symptoms, a diagnosis, or medical opinion to establish the existence of an impairment(s)."  Id.

Regarding the severity of any MDIs, the "mere presence of a disease or impairment[;]' or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render it "severe."  Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995).  A finding of "not severe" is appropriate if the "medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work[.]"  Bowen v. Yuckert, 482 U.S. 137, 154 n.12 (1987).  The plaintiff bears the burden of presenting evidence establishing that an impairment is both medically determinable and severe.  See DeChirico, 134 F.3d at 1180 (citing Berry, 675 F.2d at 467); see also 20 C.F.R. § 404.1512(a).

## 2. Analysis

Here, the ALJ noted at step two that plaintiff "reported difficulties due to headaches, particularly in 2004, 2005, and 2006." T. at 727 (citing id. at 1115-50, 1151-55, and 1225-32). Despite this, the ALJ concluded that "a primary headache disorder has not been established in accordance with Social Security Ruling 19-4p," citing plaintiff's October 27, 2006, evaluation by Dr. Richard Welles, M.D. that showed normal findings. See id. (citing id. at 1153). Plaintiff contends that this finding is insufficient to permit judicial review of plaintiff's headache impairment, "misapprehends primary headache disorder[,] and is factually and medically wrong." Dkt. No. 7 at 17-18. The Commissioner contends that, under SSR 19-4p, plaintiff's headaches were not a medically determinable impairment, and so the ALJ's finding is supported by substantial evidence. See Dkt. No. 9 at 8-9. The Court concurs with the Commissioner.

Social Security Ruling 19-4p lays out the framework under which the SSA is to evaluate conditions such as "migraines, tension-type headaches, and cluster headaches." SSR 19-4p, "Titles II and XVI: Evaluating cases involving primary headache disorders," 2019 WL 4169635, at *1 (S.S.A. Aug. 26, 2019). SSR 19-4p notes that the medical community distinguishes "primary headache disorders," which "occur independently and are not caused by another medical condition," from "secondary headaches," which are typically "symptoms of another medical condition[.]" Id. at *3. For a primary headache disorder to be established as a medically-determinable impairment for disability purposes, objective medical evidence from an acceptable medical source is required, and a diagnosis or symptom statements alone is insufficient. See id. at *5. Conversely, secondary headaches are not MDIs because the underlying medical condition is viewed as the MDI, with the claimant's headaches being

a symptom thereof.  See id.  The SSR notes that physicians diagnose a primary headache disorder "only after excluding alternative medical and psychiatric causes of a person's symptoms"; "headache journals," MRIs and CT scans can be useful in diagnosis (though imaging is not required for a diagnosis); and "incidental abnormal findings on a scan do not preclude the diagnosis of a primary headache disorder."  Id. at *4.

Here, in reviewing the record as a whole, see Brault, 683 F.3d at 447, substantial evidence supports the ALJ's conclusion at step two that plaintiff failed to establish primary headache disorder as a medically determinable impairment.  See T. at 727. Plaintiff is correct that the ALJ's rationale at step two is insufficient on its own to support his conclusion, as the decision only cites Dr. Welles's October 2006 "normal" exam findings at step two.  See id. (citing id. at 1153).  However, plaintiff's headaches are discussed at other points in the decision, which demonstrates that the ALJ found plaintiff's headaches resulted from her 2004 myleogram.  See id. at 730-31 ("In the aftermath of [the myelogram], the claimant reported that she was having headaches, and it was determined that the claimant had likely experienced a cerebrospinal fluid leak[.]").  The ALJ noted that the leak was treated with a blood patch, and cited plaintiff's treatment records in the months after that showed a "significant decrease" in her symptoms and otherwise "normal" exam results.  See id. at 731 (citing id. at 1152 (doctor's note recognizing plaintiff reported headache symptoms after the myelogram), 1126 (Oct 7, 2004, note from Dr. Bajwa finding "no evidence of objective neurologic findings"); 1129 (Oct. 20, 2004. note from Dr. Bajwa "unremarkable as before").  This evidence, connected to Dr. Welles's "normal" impressions of plaintiff's neurological

functioning at the exam in October 2006, rationally supports the ALJ's conclusion that plaintiff's headaches were secondary in nature and not, as she argues, a medically-determinable primary disorder.  <u>See</u> SSR 19-4p, at *6 ("We establish a primary headache disorder as an MDI by considering objective medical evidence (signs, laboratory findings, or both) from an [acceptable medical source] . . . We will not establish secondary headaches . . . as MDIs because secondary headaches are symptoms of another underlying medical condition."); <u>Linda M. v. Kijakazi</u>, No. 3:21-cv-57 (DJS), 2022 WL 4550810, at *7 (N.D.N.Y. Sept. 28, 2022) ("It is therefore clear that not only is an ALJ <u>entitled</u> to rely on objective evidence to find a primary headache disorder as a medically determinable impairment, but such evidence is in fact <u>required</u> by the regulations").

Plaintiff is correct that in December 2004, Dr. Bajwa listed impressions for "headaches . . . etiology unknown" and "post myelogram headaches, which have improved."  T. at 1133.  Further, as plaintiff notes in briefing, she continued to express that she suffered from headaches at various medical appointments.  <u>See id.</u> at 1111 (stating to Dr. Alt in December 2004, that "after the myelogram she had 'tons of weird symptoms.'"); 1136 (March 2005 report to Dr. Alt that plaintiff had headaches daily); 561 (Aug. 2016 report to Dr. Figueroa of post myelogram headaches); 678 (Dec. 2018 report to ANP Wenzinger of headaches).  However, diagnoses and symptom statements are insufficient to establish an MDI of a primary headache disorder, and as noted above, the other evidence surrounding plaintiff's headaches supports a finding that they were secondary in nature.  <u>See</u> 20 C.F.R. § 1421; SSR 19-4p, 2019 WL 4169635, at *5; <u>Linda M.</u>, 2022 WL 4550810, at *7; <u>Butler v. Colvin</u>, No. 6:15-cv-00455

(MAD), 2016 WL 3951153, at *4 (N.D.N.Y. Jul. 20, 2016) (affirming ALJ's determination that the plaintiff's headaches were not medically determinable when based on symptom complaints).

### C. Mental Impairments: Step Two and Medical Opinions

#### 1. Legal Standards

##### a. Step Two Mental Impairments

Where an alleged disability involves a medically-determinable mental impairment, the ALJ is to use a "special technique" that rates the degree of functional limitation caused by the mental impairment.  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); 20 C.F.R. § 404.1520a(b).  The regulations identify "four broad functional areas" that examine the claimant's ability to: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  Id. § 404.1520a(c)(3) (the "Paragraph B" categories).  These areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme."  Id. § 404.1520a(c)(4).  If the claimant's mental impairments show "marked" limitations in two of the functional areas or an "extreme" limitation in one area, the claimant can be found disabled under the Listings at step three.  See Damon J. v. Comm'r of Soc. Sec., No. 21-CV-28 (JLS), 2023 WL 2088349, at *3 (W.D.N.Y. Feb. 17, 2023) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b)).  Conversely, "if the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe'" at step two.  Kohler, 546 F.3d at 266; see also 20 C.F.R. § 416.920a(d)(1).

An ALJ's failure to classify an impairment as severe at step two is harmless if the ALJ finds other severe impairments and considers the omitted impairment in the subsequent analysis.  See O'Connell v. Colvin, 558 F. App'x 63, 65 (2d Cir. 2014) (summary order) (finding the ALJ's omission of a right knee impairment to be harmless error because the ALJ found other severe impairments and "specifically considered" the right knee dysfunction in later steps); Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (classifying ALJ's omission of anxiety and panic disorders as harmless error because the ALJ identified other severe impairments and "specifically considered" anxiety and panic attacks in later steps).

### b. Treating Physician Rule

For claims like plaintiff's, filed before March 27, 2017, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record."  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citations omitted). "[W]hen a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight."  Samantha S. v. Comm'r of Soc. Sec., 385 F. Supp. 3d 174, 184 (N.D.N.Y. 2019).  If an ALJ gives a treating physician's opinion less than controlling weight, he or she must consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) the consistency of the treating

physician's opinion with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in the claimant's particular case.  See 20 C.F.R. § 404.1527(c).  "[A]n ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule."  Samantha S., 385 F. Supp. 3d at 184; see David E. v. Saul, No. 5:20-cv-466 (DJS), 2021 WL 1439668, at *4 (N.D.N.Y. Apr. 16, 2021) ("Where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the substance of the treating physician rule was not traversed, no slavish recitation of each and every factor of [20 C.F.R. § 404.1527(c)] is required.") (internal quotation marks and citations omitted).

## 2. Analysis

The ALJ determined that, between 2004 and the date last insured of December 15, 2015, plaintiff was only mildly limited in each of the four Paragraph B categories, and therefore her mental impairments were not severe because they "did not cause more than minimal limitations on her ability to perform basic work-related mental activities."  T. at 727-28.  For interacting with others, the ALJ noted (1) plaintiff's pleasant and cooperative interactions with treatment providers and no ongoing social deficits; (2) low mental processing at times; and (3) the opinion of plaintiff's "treating psychologist," Dr. Hare, who assigned "mild" cognitive limitations.  See id. (citing id. at 1115-50, 1156-77).  For understanding, remembering, and applying information, the ALJ highlighted (1) plaintiff's completion of two years of college and prior skilled work; (2) testing on examinations with Dr. Bajwa and Dr. Hare in 2005 and 2007 that showed average intellectual functioning, mild difficulties with memory; and (3) Dr. Hare's rating

of "mild" for plaintiff's memory deficits.  See id. (citing id. at 345-56, 927-31, 1115-50, 1156-77).  For concentrating, persisting, and maintaining pace, the ALJ noted (1) plaintiff's testimony that her medications made her drowsy; (2) Dr. Hare's cognitive testing that revealed some attention and concentration deficits; (3) plaintiff's prompt attention at her medical appointments.  See id. at 728 (citing id. at 1115-50, 1156-77).  For adapting and managing oneself, the ALJ noted medical records showing that (1) plaintiff had good hygiene at her medical appointments; (2) got along with medical staff; and (3) managed her psychiatric symptoms with conservative treatment.  See id. at 728 (citing id. at 1115-50, 1156-77).

Later in the decision, the ALJ discussed plaintiff's appointments and testing with Dr. Hare on May 2, 2005, September 19, 2005, and January 8, 2007.  See id. at 731. Dr. Hare noted that, in 2005, (1) plaintiff's performance in testing was less than expected but fell within her expected range on most measures of cognitive functioning; (2) plaintiff showed improvement after a few months of cognitive rehabilitation; and (3) she could return to work at her previous job of skilled work.  See id. at 1157-67.  In plaintiff's 2007 exam, Dr. Hare noted some mental difficulties but continued improvement.  See id. at 1168-75. The ALJ also highlighted (1) plaintiff's return to work in 2005-2007 and 2008-2009; (2) a finding from Dr. Alt that plaintiff's panic attacks were managed with medication; and (3) an absence of mental status exams from plaintiff's other medical providers or any other treatment for plaintiff's mental health.  See id. at 731 (citing id. at 512, 1156-70).  Finally, the ALJ found Dr. Hare's opinion that plaintiff had "mild" cognitive limitations, and that she be granted limited accommodations in the first few months of her return to work, as consistent with Dr. Bajwa's findings and not

inconsistent with unskilled work that the ALJ later deemed available to plaintiff up through December 2015.  See id. at 733-34.

In the face of mild limitations and improvements, an absence of mental health treatment and adequate medication management, and plaintiff's working during the Title II period, substantial evidence supports the ALJ's non-severe finding at step two, as well as the ALJ's discounting of the more severe aspects of plaintiff's symptom testimony. See Sherry T. v. Comm'r of Soc. Sec., No. 1:21-cv-977 (JGW), 2023 WL 8030129, at *5 (W.D.N.Y. Nov. 20, 2023) ("Dr. Deneen's [mild] findings and opinion supported the ALJ's decision to not include mental limitations because only mild limitations were opined.") (citing Antoinette C. v. Comm'r of Soc. Sec., No. 20-cv-6728 (WMS), 2022 WL 765268, at *5 (W.D.N.Y. Mar. 14, 2022) (finding that where an opinion assessed mild limitations "not significant enough to interfere with [the plaintiff's] ability to function on a daily basis," the ALJ's non-severe finding was substantially supported and no limitations in the RFC were required); Jessica E. v. Saul, No. 5:18-CV-543 (CFH), 2019 WL 3776157, at *9 (N.D.N.Y. Aug. 12, 2019) (affirming the ALJ's treatment of the plaintiff's depression and anxiety as non-severe "largely based on the medical opinions of [doctors] who found no more than mild functional limitations [and the] plaintiff's lack of mental health treatment."); Trevor H. v. Comm'r of Soc. Sec., No. 2:19-cv-236 (JMC), 2020 WL 7350769, at *4 (D. Vt. Dec. 15, 2020) (finding substantial evidence supported "non-severe" finding where the plaintiff did not have any mental health treatment, displayed mostly normal mental faculties, and demonstrated improvements in mild impairments); Chambers v. Comm'r of Soc. Sec., No. 7:14-cv-190 (GTS), 2015 WL 6157434, at *5 (N.D.N.Y. Oct. 20, 2015) (affirming non-severe finding on the plaintiff's

mental impairments where, among other things, the record showed that the plaintiff's conditions were mild, had improved, and were effectively managed with medication); see also 20 C.F.R. § 404.1520a(d)(1) (noting that, if the degrees of limitation in the broad functional areas are "mild," then the claimant's mental impairment is not severe). Given this, the ALJ was not required to include mental limitations in the RFC.  See Maura B. C. v. Comm'r of Soc. Sec., No. 5:21-CV-0294 (DEP), 2022 WL 2789102, at *6 (N.D.N.Y. July 15, 2022) (noting that a mild degree of mental limitations "does not require any specific corresponding limitation in the RFC finding.").

Plaintiff focuses on the illogic of the ALJ's assessment regarding Dr. Hare's opined accommodations when plaintiff returned to work in 2005.  Dr. Hare stated that plaintiff would need "a brief period of retraining, a gradual increase in her workload, the ability to use checklists and audio recordings, flexible break times, and a part-time work schedule during her first 30 days of work."  T. at 733 (citing id. at 1151-76).  The ALJ stated that "even if [Dr. Hare's short-term accommodations] applied to a continuous period of 12 months, they would not erode [plaintiff's] ability to perform the unskilled sedentary substantial gainful activity contemplated by my denial of the Title II portion of this claim at step five of the sequential evaluation."  T. at 733-34.  Plaintiff contends that this statement "makes no sense," see Dkt. No. 7 at 23, and the Court agrees.  If plaintiff were limited to, for example, "a part-time work schedule" for longer than a year, then, axiomatically, she could not perform full-time work during the same period.  See Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . , [meaning] 8 hours a day, for 5 days a week, or an equivalent work

schedule.") (quoting SSR 96–8p, 1996 WL 374184, at *2 (S.S.A. Jul. 2, 1996)).

However, Dr. Hare opined that these limitations were only necessary for a few months.

See T. at 1151-76.  Thus, they do not demonstrate an inability to work due to an

impairment expected to last more than twelve months.  See 42 U.S.C. § 423(d)(1)(A).

Therefore, the ALJ's illogical hypothetical is harmless error and does not require

remand.  See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (concluding that

"where application of the correct legal principles to the record could lead only to the

same conclusion, there is no need to require agency reconsideration").

　　　　Plaintiff also contends that the ALJ erred in failing to properly evaluate Dr. Hare's

opinion under the regulations, including explaining its supportability or consistency.  See

Dkt. No. 7 at 22.  Plaintiff is correct that the ALJ did not explicitly cover the enumerated

factors in the regulation.  See 20 C.F.R. § 404.1527 (outlining the "treating physician"

rule, which is applicable to cases filed before March 27, 2017).  However, it appears

that the ALJ did not reject Dr. Hare's opinion, but instead adopted it for its limited scope.

To the extent the decision can be read as a rejection of Dr. Hare's opinion, the ALJ

adequately discussed the factors by citing to evidence throughout the decision that

considers the opinion's support and consistency, as well as Dr. Hare's role as a treating

source and his specialty.  See T. at 727-28, 731-32, 733-34.  Thus, any omission of the

terms noted in the regulation is harmless.  See Schillo v. Kijakazi, 31 F.4th 64, 78 (2d

Cir. 2022) (finding the ALJ's error in failing to explicitly review the "treating physician"

factors to be harmless where the decision effectively covered the factors); Mahmud v.

Saul, No. 3:19-CV-01666-TOF, 2020 WL 6866674, at *12 (D. Conn. Nov. 23, 2020)

(noting that improperly-ignored evidence "could (at most) establish a short-term

disability[;] Its absence is therefore harmless.") (citing, inter alia, Zabala, 595 F.3d at 409).

Finally, to the extent that plaintiff argues that substantial evidence is lacking because other evidence supports plaintiff's claim—including medical records and doctors' opinions after December 31, 2015—plaintiff is reminded that the ALJ is the fact finder in disability cases, and the Court is not permitted to reconsider the evidence. See Halloran, 362 F.3d at 31 (reminding that substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); Brault, 683 F.3d at 448 (substantial evidence is "a very deferential standard of review," meaning that once an ALJ finds facts, the court can reject them "only if a reasonable factfinder would have to conclude otherwise").

## V. Conclusion

Wherefore, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 17, 2024
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

31